UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANNA JABER,

        Plaintiff(s),        CASE NUMBER: 09-11610
                                        HONORABLE VICTORIA A. ROBERTS

v.

WAYNE STATE UNIVERSITY
BOARD OF GOVERNORS and
PAULA C. WOOD,

        Defendant(s).
_____/

**ORDER GRANTING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

On April 29, 2009, Plaintiff Hanna Jaber filed an Amended Complaint for: (1) violation of her Procedural Due Process rights; (2) race discrimination; (3) negligence; and (4) intentional infliction of emotional distress.

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. #31). Defendants ask the Court to dismiss Jaber's Amended Complaint in its entirety.

Defendants' motion is **GRANTED IN PART**.

**II.    BACKGROUND**

    **A.    Hanna Jaber's Education at Wayne State University**

Jaber is an Arab-American female. She was admitted to Wayne State University ("WSU") in 1988.

1

Jaber was awarded two Bachelor of Arts degrees, in 1992 and 1994; a Masters in Sociology in 2000; and, an Education Specialist Certificate in 2006.

**B.  Hanna Jaber's First Incident of Misconduct**

In a letter dated May 8, 2008, Janet Andrews, the Academic Services Officer and Teaching Certification Officer for the College of Education, informed Rick Earnest, the Student Conduct Officer, that Jaber falsely submitted a passing test score for the Biology section of the Michigan Test for Teacher Certification.

Jaber was charged with three violations of the Student Code of Conduct: Section 4.1, academic misbehavior; Section 4.11, conduct that is a crime; and, Section 4.13, knowingly submitting false information to the University.

On June 16, 2008, the case was referred to Dean Paula C. Wood, and Jaber had a formal hearing.  Dean Wood is the Dean of WSU's College of Education.

In a letter dated September 22, 2008, the Formal Hearing Committee sustained all three charges.  As a result, Jaber is permanently banned from admission to, or employment in, the College of Education.

Provost Nancy Barrett denied Jaber's appeal in a letter dated November 11, 2008.

**C.  Hanna Jaber's Second Incident of Misconduct**

In the midst of the above investigation – but before Jaber was banned from the College of Education – she was admitted to the doctoral program in the College of Education.  Jaber completed the program, and on August 15, 2008, the WSU Board of Governors awarded her a Doctorate in Education.

Dr. Stephen Hillman is a faculty member who sat on the Formal Hearing

2

Committee for Jaber's first incident of misconduct. He suspected that Jaber may have plagiarized parts of her dissertation.

Dr. Hillman submitted Jaber's dissertation to "Turn It In" and "Safe Assign," electronic services that check documents for plagiarism. Dr. Hillman says the reports from these services proved that Jaber plagiarized parts of her dissertation.

R. Craig Roney, the Assistant Dean for Teacher Education in the College of Education, conducted an investigation. He resubmitted Jaber's dissertation to "Turn It In" and "Safe Assign." Dean Roney found numerous instances of "blatant plagiarism."

On October 31, 2008, Dean Roney submitted a letter and investigation documents to Student Conduct Officer Earnest, requesting that he charge Jaber with academic misconduct.

Jaber was charged with a violation of Section 4.1 of the Student Code of Conduct, which prohibits all forms of academic misbehavior, including plagiarism. In a letter dated November 18, 2008, Mr. Earnest informed Jaber of the charge and the procedure for adjudication of the charge.

On December 3, 2008, Mr. Earnest discussed the charge with Jaber. Jaber says Mr. Earnest informed her that no student ever had his or her degree revoked.

On January 16, 2009, Mr. Earnest referred the case to Dean Wood.

In a letter dated January 21, 2009, Dean Wood informed Jaber that she could either have a formal hearing, or an informal disciplinary conference. Jaber chose the informal conference, she says because employees of WSU, including Mr. Earnest, said that was the better course of action.

Dean Wood held the conference on February 19, 2009. Jaber admits that she

did not use the proper citation format throughout her entire dissertation, but says she pointed out instances where she believed she cited properly. Jaber also submitted letters from two of her dissertation committee members, Dr. Marc Rosa and Dr. Mary Sengstock, which said Jaber should have an opportunity to revise her dissertation. However, Dr. Rosa never saw Jaber's dissertation after it was ran through "Turn It In" and "Safe Assign," nor did he know that 27 instances of plagiarism were found in Jaber's dissertation.

Jaber says Dean Wood ended the conference after approximately 45 minutes, she did not have a chance to review all of the 27 allegations of plagiarism with Dean Wood, and she was not told that she could present witnesses on her behalf.

Dean Wood sustained the charges of academic misbehavior in a letter dated March 4, 2009. As a result, Dean Wood revoked Jaber's doctoral degree. This was the only degree Dean Wood ever revoked.

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant

meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.  APPLICABLE LAW AND ANALYSIS

### A.  Did Dean Wood have the Power to Revoke Jaber's Doctorate Degree?

The Court first determines whether Dean Wood had the power to revoke Jaber's Doctorate degree under Michigan law.

Pursuant to MCLA §390.614, "The conduct of [WSU's] affairs and control of its property shall be vested in a board of governors, the members of which shall constitute a body corporate known as the 'board of governors of Wayne [S]tate [U]niversity[.]"

MCLA §390.644 says, "The board of governors of Wayne [S]tate [U]niversity shall have general supervision of Wayne [S]tate [U]niversity, and the direction and control of all university funds, and shall perform such other duties as may be prescribed by law."

Finally, MCLA §390.645 says, "The board . . . confer[s] degrees and grant[s]

diplomas as are usually conferred or granted by other similar institutions[.]"

The statutes governing WSU – particularly the one concerning the ability to confer degrees and to grant diplomas – are similar to the statutes that govern New Mexico State University. *See* N.M.Stat.Ann. §21-8-5 (A five-member Board of Regents is responsible for enacting all rules and regulations necessary to the operation of the university); N.M.Stat.Ann. §21-8-6 (the Regents are given the express power to "enact laws for the government of [NMSU]"); N.M.Stat.Ann. §21-8-7 (the Regents are vested with exclusive authority to confer degrees and diplomas).

In *Hand v. Matchett*, 957 F.2d 791 (10th Cir. 1992), the Board of Regents approved the procedures that the dean of the graduate school proposed for handling the revocation of degrees. *Hand*, 957 F.2d at 793. Subsequently, the dean of the graduate school determined, on his own, that the plaintiff's degree should be revoked for plagiarism. *Id.* The district court held that the revocation was void because the Board of Regents had no role in revoking the plaintiff's degree. "[T]he Board of Regents is the only university body which may confer degrees, it likewise is the only body which may revoke them." *Id.* at 794.

The appellate court agreed. "The plain language of [N.M.Stat.Ann. § 21-8-7] gives the Regents exclusive power to confer degrees. Implicit in that power must be the authority to revoke degrees." *Id.* (citing *Crook v. Baker*, 813 F.2d 88, 92 (6th Cir. 1987); *Waliga v. Bd. of Trustees*, 22 Ohio St.3d 55 (1986)).

> The ability to revoke degrees obtained through fraudulent means is a necessary corollary to the Regents' power to confer those degrees. Thus, the university is not statutorily barred from withdrawing [the plaintiff]. The question in this case is whether the revocation was done in accordance with New Mexico statute.

6

> The Board of Regents approved the procedures which [the dean of the graduate school] followed to revoke [plaintiff's] degree. The Board did not, however, have any involvement in the revocation proceedings. It was not consulted about the sanction, nor was there any mechanism incorporated into the adopted procedures which required the Board to oversee the process. [The plaintiff] was not provided a hearing before the Board prior to the revocation. *See Crook*, 813 F.2d at 90 ("[T]he Regents, having approved the finding of fraud and having accepted the recommendation, rescinded the degree.").
>
> . . .
>
> The statute at issue gives the Board of Regents exclusive power to confer degrees. Conversely, it is appropriate to assume that to the extent a power to revoke degrees is recognized, it too is vested exclusively in the Regents. None of the statutes governing the university expressly allow the Regents to delegate this, or any other, power.
>
> . . .
>
> The evidence is undisputed that with the exception of approving [the dean of the graduate school's] procedures for degree revocation, the Board of Regents had no involvement in the process. They delegated final authority to revoke the degree to a subordinate body in violation of New Mexico law. In order to come within the statute, it is necessary that the Board of Regents retain some involvement in the revocation process. They must exercise final authority. Because the Board of Regents did not exercise final authority in the decision to revoke [the plaintiff's] degree, the revocation is void. As a result, we must hold that the [d]efendants acted outside New Mexico law when they revoked [the plaintiff's] degree.

*Id.* at 795-96; *see also Crook v. Baker*, 813 F.2d 88, 91 (6th Cir. 1987) (the Regents of the University of Michigan, which granted the plaintiff a Master of Science degree, may revoke that degree); *Waliga v. Bd. of Trustees*, 22 Ohio St.3d 55, 57 (1986) ("The power to confer degrees necessarily implies the power to revoke degrees erroneously granted").

While the WSU Board of Governors approved the procedures outlined in the Student Code of Conduct that Dean Wood followed to revoke Jaber's Doctorate degree,

7

the Board of Governors nonetheless has the exclusive power to revoke degrees. The Board was not involved in Jaber's revocation process. Accordingly, Dean Wood's revocation of Jaber's Doctorate degree is void.

Defendants say Sections 13, 14, and 16 of the Student Code of Conduct give Dean Wood the authority to revoke Jaber's degree. *See* Section 13.4 and Section 14.4 ("the Dean shall decide the appropriate sanctions as specified in Section 5"); Section 16.2 ("The Dean may adopt the sanctions recommended by the Committee or may impose sanctions more or less severe than those recommended by the Committee.").

Notably, the sanctions identified in Section 5 do not include revocation of a degree. This sanction would have to fit into the "Other Sanctions" category. *See* Section 5.11. This Court is hard pressed to find that a sanction as severe as revocation of a degree, would not be specifically enumerated as a sanction the hearing committee and dean would have the ability to impose, or that it would be relegated under the broad heading of "Other."

Regardless of what is outlined in the Student Code of Conduct, the Court finds Dean Wood acted outside of Michigan law when she revoked Jaber's degree.

The Court need not determine whether Jaber can succeed on her procedural due process claim. *See Crook*, 813 F.2d at 91 (federal courts must consider non-constitutional grounds for decision before reaching any constitutional questions).

**B.    Race Discrimination, Negligence, and Intentional Infliction of Emotional Distress Claims**

Jaber did not respond to the Defendants' motion regarding her race discrimination, negligence, and intentional infliction of emotional distress claims.

8

Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The moving party must always bear the initial burden of demonstrating the absence of a genuine issue of material fact, even if the party fails to respond. *Id.* at 454-55. "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [it] has discharged that burden." *Id.* at 455.

### 1. Race Discrimination

Jaber's Amended Complaint alleges that her race prompted Defendants to revoke her Doctorate degree without conducting the required investigation.

To prevail on her claim for race discrimination, Jaber must meet the burden-shifting standard of proof for Title VII cases established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Jaber must first establish a *prima facie* case of discrimination by a preponderance of the evidence. The burden of production then shifts to Defendants to articulate a legitimate, non-discriminatory reason for their actions. If Defendants meets their burden, Jaber must then prove by a preponderance of the evidence that Defendants' proffered reason is pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04.

Jaber can establish a *prima facie* case of discrimination by showing four elements: (1) she was a member of a protected class; (2) she suffered an adverse action at the hands of the Defendants; (3) she was qualified for a Doctorate degree; and

9

(4) a comparable non-protected person was treated better. See Mitchell, 964 F.2d at 582.

Jaber fails on the fourth element. She is the only student whose plagiarism was discovered after the Doctorate degree was awarded.

The Court finds Defendants discharged their burden to prove there is no genuine issue of material fact regarding Jaber's race discrimination claim.

### 2. Negligence and Intentional Infliction of Emotional Distress Claims Against WSU Board of Governors

MCLA §691.1407(1) says:

Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.

"Governmental function" means "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCLA §691.1401(f).

Because Defendants were engaged in the exercise of a government function vis-à-vis Jaber, the Court finds Defendants met their burden to prove there is no genuine issue of material fact; the Board of Governors is immune from Jaber's claims for negligence and intentional infliction of emotional distress, related to the revocation of her degree.

### 3. Negligence Claim Against Dean Wood

MCLA §691.1407(2) says

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the . . . employee . . . while in the course

of employment . . . if all of the following a meet:

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Dean Wood reasonably believed she was acting within the scope of her authority when she revoked Jaber's Doctorate degree, WSU was engaged in an activity authorized by Michigan law (i.e., the operation of WSU), and Jaber does not allege gross negligence.

The Court finds Defendants met their burden to prove there is no genuine issue of material fact; Dean Wood is immune from Jaber's claim for negligence, related to the revocation of her degree.

### 4. Intentional Infliction of Emotional Distress Claim Against Dean Wood

To succeed on her claim for intentional infliction of emotional distress, Jaber must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985). Liability has only been found:

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 602-03 (quoting Restatement (Second) of Torts §46, comment d, p. 72-73).

11

"It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.' Where reasonable minds may differ, the question is for the jury." *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (internal citation omitted).

It is not "utterly intolerable in a civilized community," *See Roberts*, 422 Mich. at 603, to revoke a student's degree for plagiarism – with or without an adequate investigation. Accordingly, the Court finds Defendants met their burden to prove there is no genuine issue of material fact; Jaber cannot succeed on her claim for intentional infliction of emotional distress against Dean Wood.

## V. CONCLUSION

Defendants' motion is **GRANTED IN PART**. The Court **DISMISSES** Jaber's claims for race discrimination, negligence, and intentional infliction of emotional distress.

The Court need not decide whether Jaber has a procedural due process claim. The Court finds, as a matter of law, that Dean Wood lacked the power to revoke Jaber's Doctorate degree.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 26, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 26, 2010.

s/Linda Vertriest
Deputy Clerk