UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANNA JABER,

        Plaintiff,        CASE NUMBER: 09-11610
                              HONORABLE VICTORIA A. ROBERTS

v.

WAYNE STATE UNIVERSITY
BOARD OF GOVERNORS,
and DR. PAULA C. WOOD

        Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment. Plaintiff, Hanna Jaber, alleges Defendants Wayne State University ("WSU"), WSU Board of Governors ("Board"), and WSU's College of Education Dean Paula C. Wood, violated her Fourteenth Amendment procedural due process rights by revoking her doctoral degree in education after Dean Wood concluded she plagiarized a substantial portion of her dissertation. Defendants contend that the procedures used to sustain the charges against Plaintiff, and to revoke her degree, were constitutionally adequate.

Oral argument was heard on March 2, 2011.

The Court finds that the process afforded Plaintiff was sufficient to meet the minimal requirements of procedural due process. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

1

## II.     BACKGROUND

Plaintiff filed a Second Amended Complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1982).  The Complaint, along with the parties' motions and exhibits attached, sets forth the relevant facts.  In April 2008, Plaintiff completed her doctoral dissertation.  In June 2008, she orally defended her dissertation and was awarded a degree of Doctor of Education in August 2008.  In November 2008, Assistant Dean for Teacher Education in the College of Education, R. Craig Roney, notified Plaintiff that she was accused of plagiarizing her dissertation.  Plaintiff had been brought up on academic misconduct charges once before; in 2008 she admitted to, and was found guilty of, falsifying a test score, after undergoing a formal hearing pursuant to Section 15 of WSU's Student Code of Conduct ("Student Code").

Dean Roney's notice came after he conducted a three-week investigation which was prompted by Professor Stephen Hillman, who was on the Hearing Committee for Plaintiff's test score falsification charge.  Professor Hillman suspected that Plaintiff plagiarized her dissertation.  Dean Roney used two plagiarism detection software programs to assist in deciding whether Jaber should be formally charged with plagiarism.  During Dean Roney's investigation, he found numerous instances of plagiarism, as well as several instances of appropriate citation format, indicating to him that Plaintiff knew how to correctly cite work of other authors.

Plaintiff was formally charged with a violation of Section 4.1 of the Student Code, which prohibits all forms of academic misconduct, including plagiarism.  Pursuant to the Student Code, when a student is charged with academic misconduct, the Student Conduct Officer must initiate a fact-finding investigation which includes a fact-finding

conference with the student charged with violating the school's rules. (Doc. #52, Ex. 6 at 12). Officer Earnest sent Plaintiff a letter informing her of the pending charges and that if found guilty, the Dean of the College of Education could impose "the full range of sanctions available to her." The letter did not list any specific sanctions.

Officer Earnest held a fact-finding conference on December 3, 2008. Plaintiff contends that this conference was constitutionally deficient because Mr. Earnest did not contact Plaintiff's academic advisor or the members of her doctoral committee. After Officer Earnest concluded that further action was warranted, Dean Wood sent Plaintiff a letter giving her the option to participate in an informal disciplinary conference with the Dean, or a formal hearing, pursuant to Sections 14 or 15 of the Student Code. Dean Wood also sent Plaintiff a copy of the Student Code. The letter informed her that if she chose the informal conference with Dean Wood, the full range of sanctions authorized by the Student Code would apply, and that she would lose her right to an appeal.

Plaintiff says she elected the informal procedure "at the recommendation of Mr. Earnest and the staff at the Ombudsperson's Office." (Doc. # 41, Second Amended Complaint at 3). She admits she was told a potential sanction, if the charges were sustained, was revocation of her degree. However, she argues WSU officials led her to believe it would not impose this sanction.

Dean Wood held an informal conference with Jaber on February 19, 2009. Jaber says the meeting lasted less than one hour. During the conference Jaber presented evidence against the plagiarism charges, including letters from her dissertation committee members and a power point presentation. Dean Wood made written findings. She discounted the incorrect citations Plaintiff contested during the

3

conference, and only took the remaining instances of plagiarism into account. Dean Wood sustained the plagiarism charges and notified Plaintiff, in March 2009, that she would revoke Jaber's doctoral degree. Dean Wood did not meet with the Defendant Board to discuss her conclusion or proposed sanction.

Plaintiff alleges that the degree revocation process violated her procedural due process rights because she had a constitutionally protected property interest in her degree, and Defendants (1) did not conduct the appropriate investigation into the plagiarism charges; (2) revoked her degree after holding an informal disciplinary conference rather than a formal hearing; (3) failed to contact Jaber's dissertation advisor and/or dissertation committee regarding her mastery of the subject and the appropriate penalty for the pending charge; and (4) proceeded with revocation through Dean Wood, who lacked the authority to revoke Jaber's degree, rather than through the Defendant Board. The complaint alleges various other violations but these were all dismissed by a Court Order dated August 26, 2010. (Doc. # 37). The only remaining claim is Plaintiff's procedural due process claim, grounded in her § 1983 count.

## III.   ANALYSIS

The Court will grant summary judgment in favor of the moving party if that party establishes that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986); *see also* Fed. R. Civ. P. 56(c). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 250 (1986). The Court views the evidence in favor of the non-moving party. *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 138 (6th Cir. 1993). Summary judgement analysis "requires the district court to determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 251-52).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In the Sixth Circuit, the Due Process Clause is implicated by higher education disciplinary decisions. *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) (citing *Jaska v. Regents of Univ. of Mich.*, 597 F.Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986)). "The Due Process Clause...sets the floor or lowest level of procedures acceptable." *Id.* at 636. The amount of process due varies from case to case according to the facts and is evaluated within the framework set forth by the Supreme Court in *Mathews*. *Id.* at 634; *see also Mathews*, 424 U.S. at 335 ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (citation an internal quotation marks omitted)); *Jaska*, 597 F.Supp. at 1248 ("[D]ue process is a flexible concept and will vary with the facts of each case....").

In *Mathews*, the Supreme Court stated:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation

5

> of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. The Sixth Circuit applied this balancing test to the university discipline context. In *Flaim*, It described the appropriate factors as: (1) the seriousness of the charge and potential sanctions; (2) the danger of an error and the benefit of alternate procedures, and (3) the public or governmental burden of these alternate procedures. 418 F.3d at 635.

Notice and an opportunity to be heard remain the basic requirements of procedural due process. *Goss v. Lopez*, 419 U.S. 565, 579 (1975); *Flaim*, 418 F.3d at 635. In *Goss*, the Supreme Court opined "that the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." 419 U.S. at 579. The *Jaska* court recognized, however, that "a school disciplinary proceeding is not a criminal trial, nor is a student accused of [academic misconduct] entitled to all the procedural safeguards afforded criminal defendants." 597 F.Supp. at 1250. "Formalizing hearing requirements would divert both resources and attention away from the educational process." *Id.* The *Jaska* court said, "[w]hile a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classroom into courtrooms." *Id.*

Before it embarks on the *Mathews* analysis, the Court must conclude that due process applies. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Benjamin v. Brachman*, No. 05-4659, 246 Fed.Appx. 905, 2007 WL 2264513, at *8 (6th Cir. Aug. 8, 2007) ("When considering a due process claim, courts undertake a two-step analysis.

The first step is to determine whether the plaintiff has a liberty or property interest entitled to due process protection."). Defendants argue due process does not apply because Plaintiff did not have a property interest in a degree obtained by fraud. The Court disagrees. In *Crook v. Baker*, 813 F.2d 88, 98-99 (6th Cir. 1987), a case factually similar to this one, the Sixth Circuit stated, "Crook's loss of his masters degree on the basis of fraud meant the loss of an important property interest and implicated injury to a liberty interest...." *See also Waliga v. Bd. of Trs. of Kent State Univ.*, 22 Ohio St.3d 55, 57-58, 488 N.E.2d 850 (Ohio 1986) (holding that university board of trustees has the authority to revoke an erroneously-granted academic degree for good cause such as fraud, deceit or error, but only after affording degree-holder a constitutionally adequate hearing procedure). To hold otherwise would require a trial on the issue of fraud, before the Court could even consider whether Plaintiff is entitled to any due process.

However, the Court finds that Plaintiff was afforded constitutionally adequate notice and opportunity to be heard prior to the revocation of her degree. "Constitutionally adequate notice is that which provides a person with sufficient information to make the eventual hearing meaningful." *Picozzi v. Sandalow*, 623 F.Supp. 1580 (E.D. Mich. 1986). Plaintiff complains that the Student Code did not list degree revocation as a potential sanction, and that she was told by WSU officials that the school had never revoked a degree in the past. Yet, the Sixth Circuit has never held that an accuser must formalize, in writing, all contemplated sanctions an accused faces before notice can be said to pass constitutional muster. The closest the Sixth Circuit came to that was in *Flaim*, where the court stated "[t]he stronger the private interest...the more likely a formal written notice- informing the accused of the charge,

7

the policies or regulations the accused is charged with violating, and a list of possible penalties- is constitutionally required." 418 F.3d at 635 (citing *Goss*, 419 U.S. at 584). While it would have been better if WSU informed Plaintiff *in writing* that she faced degree revocation, the record reveals that WSU officials provided oral notice of this possibility; in fact, Plaintiff pleaded with Dean Wood not to revoke her degree at the conference that was held. Notice was thus sufficient to make the eventual hearing meaningful.

Plaintiff relies on *Goodreau v. Rector and Visitors of the Univ. of Virginia*, 226 F.Supp.2d 694, 697 (W.D. Va 2000), a case similar to this, where a university graduate's degree was revoked after he was convicted of an "honor offense." The *Goodreau* court held, "[i]n order for notice to be sufficient under the Constitution, it must inform not only of the charge, but also of the possible sanctions that may be imposed." *Id.* at 704. However, it is beyond dispute that Plaintiff was informed by WSU officials that degree revocation was a potential sanction if the plagiarism charges were sustained. The Court finds this distinction fatal to Plaintiff's argument. The *Goodreau* court relied on *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379-81 (3d Cir. 1997). *Id.* at 704. There, the Third Circuit required particularized notice of the contemplated sanction to allow the accused attorneys to utilize their opportunity to be heard in a meaningful way; to raise matters they otherwise may not have raised. *Id.* at 704. Here, Plaintiff testified she presented all of the evidence she wished to present to combat the charges. Moreover, while the Student Code does not list degree revocation as a potential sanction for academic misconduct, it does not foreclose the possibility; it warns that the Dean can impose sanctions other than those listed in the Code.

Plaintiff also alleges Dean Wood violated M.C.L. § 390.645, which she says gives the Board the sole authority to revoke a degree. She says this state law violation establishes a due process deprivation. However, the Dean's alleged lack of statutory authority to revoke Jaber's degree without the involvement of the Board does not, by itself, violate due process. *See Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976) ("It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions."); *Jaska*, 597 F.Supp. at 1250-51 (concluding that student received due process despite the fact that the university's hearing violated two procedures specified in the university's "Manual of Procedures for the Academic Judiciary."); *Picozzi*, 623 F.Supp. at 1579-80 ("Due process is a matter of federal constitutional law; failure to comply with state procedures does not, by itself, violate due process." (citing *Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n. 8 (1978))). Instead, the question is, did the procedure available to Jaber itself impinge on her due process rights in light of the private interests at stake, the danger of error and the benefit of alternative procedures, and the burden of imposing an alternative procedure.

In applying this balancing test, the Court considers all procedures available to Plaintiff, not just the one she elected. *See, e.g.*, *Rathjen v. Litchfield*, 878 F.2d 826, 839-40 (5th Cir. 1989) (A plaintiff who failed to take advantage of available procedural safeguards was not denied due process, notwithstanding jury finding that plaintiff was fraudulently induced to forego a formal hearing); *Riggins v. Bd. of Regents*, 790 F.2d

9

707, 711 (8th Cir. 1986) ("This court has said that: A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them [sic]." (citations and internal quotation marks omitted)); *Dusanek v. Hannon*, 677 F.2d 538, 542-43 (7th Cir. 1982) ("The availability of a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure."); *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) ("[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing."). The relevant test is whether Plaintiff was afforded adequate notice and *opportunity* to he heard. Thus, the Court considers WSU's formal hearing procedure, even though Plaintiff elected to forego that procedure in favor of an informal conference with Dean Wood.

Plaintiff certainly has a strong private interest in retaining her degree. Defendants acknowledge this, but focus the Court's attention on the other factors in play. Defendants emphasize that although Plaintiff's conference with Dean Wood was brief, Plaintiff testified that she presented all of the evidence she wished to present. Defendants also argue that Plaintiff's dissertation was replete with instances of plagiarism, even discounting the instances Plaintiff contested as citation errors, which Defendants argued at the motion hearing still counted as plagiarism and were thus sanctionable. This finding was made after Plaintiff's dissertation was run through plagiarism detection software, and after a fact-finding conference and disciplinary hearing between Plaintiff and WSU officials. Defendants emphasize that throughout

this investigation, Plaintiff simply maintained that she was a good person and should be given a second chance; she did not dispute the substance of the charges against her. Thus, the risk of an erroneous determination was relatively low.

Defendants say any approval of degree revocation by the Board would have been a mere formality; Dean Wood held a conference, heard evidence, and made findings. Although the sanction was severe, so was the infraction, which threatened the institutional integrity of the University. Defendants argue that requiring WSU to institute a process whereby the entire Board meets to hear charges of academic misconduct would create an undue burden on the Board and the University, and may even force the Board to violate Michigan law.

After weighing the *Mathews* factors and considering the parties arguments, the Court finds that Defendants gave Plaintiff a constitutionally sufficient opportunity to be heard. The Student Code gives both current and former WSU students accused of academic misconduct, the option to select a formal hearing process when the potential sanction is severe. In such cases, a Committee of three faculty members and two students holds a hearing on the charges. The student must be notified of the hearing date at least five days prior to the hearing and is given the opportunity to present evidence and witnesses and to question opposing witnesses. Students have the right to bring an advisor or an attorney to the hearing. If the Committee sustains the charges, the Academic Dean or the Dean of Students decides the appropriate sanction. The student is entitled to appeal the decision to the University's President who can affirm, reverse or modify the decision and/or sanction.

This procedure is similar to the procedures used in *Crook* and *Jaska*, which both

involved imposition of sanctions after a hearing before a panel of decision-makers. In *Jaska*, the court emphasized that the student was given the opportunity to discuss his case with the Assistant Dean of Student Academic Affairs and to read a prepared statement to, and participate in an informal discussion with, the hearing panel, which consisted of two students and two professors. 597 F.Supp. at 1247, 1254. The court concluded that the plaintiff "was given a meaningful opportunity to present his version of the facts" and "additional procedural safeguards...[were] either too cumbersome and intrusive into the educational process, or would not reduce significantly the risk of an erroneous deprivation of rights." *Id.* at 1254. The same is true here.

Likewise, in *Crook*, although the procedure utilized to revoke a degree involved more layers of review than are envisioned by WSU's process, 813 F.2d at 96-97, the Sixth Circuit focused on the plaintiff's hearing before the panel that sustained the charges against him to conclude his process was constitutionally sufficient. *Id.* at 97-98. The court observed that plaintiff had the opportunity to have counsel present, respond to the charges against him, present evidence and witnesses, question the other witnesses, file exceptions to the panel's findings, and argue his case before the Regents of the University. *Id.* While one difference between WSU's procedure and that employed in *Crook*, is the opportunity to argue a case before the Regents (or in this case, the Board), the Court finds this distinction non-dispositive in light of the other procedural safeguards afforded by WSU's formal hearing process. The Court finds that a hearing or review by the Board would not have provided Plaintiff substantially more protection against error than that provided by the formal hearing procedure.

Additionally, although the Court need not decide whether the informal conference

with Dean Wood was constitutionally adequate, the Court notes that even the informal procedure gives an accused student the right to call witnesses and to be assisted by an attorney or representative.  It would appear, then, that although Plaintiff complains that Dean Wood and the other investigators did not question Plaintiff's academic advisor or dissertation committee members, she had the right to call these individuals as witnesses, and simply chose not to.  Plaintiff was provided a copy of the Student Code prior to her conference with the Dean.  Thus, she was aware, or should have been aware, of the tools at her disposal to combat the charges.  She cannot ignore the procedural safeguards available to her and then complain that the lack of these very safeguards amounted to a deprivation of due process.

Finally, Dean Wood is entitled to summary judgment for another reason based on qualified immunity.  Plaintiff does not address or dispute this contention made by Defendants.  Therefore, she waived or abandoned her claim against Dean Wood.  *See*, *e.g.*, *Kroll v. White Lake Ambulance Authority*, No. 09-626, 2010 WL 3273057, at * 1 (W.D. Mich. Aug. 19, 2010).

**IV.     CONCLUSION**

Because Plaintiff was afforded constitutionally adequate notice and opportunity to be heard prior to the revocation of her doctoral degree, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.  Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED.**

                                                                        s/Victoria A. Roberts
                                                                       Victoria A. Roberts
                                                                       United States District Judge

Dated: March 7, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 7, 2011.

s/Linda Vertriest
Deputy Clerk

---